**Tagged Opinion**



## ORDERED in the Southern District of Florida on November 25, 2009.

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ALDERWOODS GROUP, INC., OSIRIS HOLDING OF FLORIDA, INC., and NORTHSTAR GRACELAND, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ADV. NO. 08-1266-BKC-RAM-A |
| REYVIS GARCIA, RAMONA JOHNSON, and MERCEDES WOODBERRY, | ) ) ) ) |
| Defendants. | ) ) ) |

MEMORANDUM OPINION AND
ORDER GRANTING DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

The Plaintiffs in this adversary proceeding are the owners

and former owners of a cemetery in Miami, Florida. The Defendants are relatives of family members buried in the cemetery. The relatives have sued the cemetery owners in state court for gross negligence, tortious interference with dead bodies, intentional or reckless infliction of emotional distress, and injunctive relief. The claims arise from the alleged failure of the cemetery to locate the bodies of the buried relatives and in one instance, from allegedly disturbing or desecrating the remains in an effort to locate the grave.

The cemetery owner and prior owners filed this adversary proceeding seeking declaratory relief, specifically, a declaration that all of the claims asserted in the state court case were discharged in a prior bankruptcy case. Cross motions for summary judgment are pending. The court finds that the publication notice given in the prior bankruptcy case did not comport with due process. Therefore, the pending state court claims were not discharged.

<u>**Factual and Procedural Background**</u>

As described in the introduction, the key events underlying this proceeding occurred in a cemetery located in Miami, Florida, known as Graceland Memorial Park South ("Graceland") and in a bankruptcy case in the District of Delaware, which included the owner of Graceland. To better understand the players, it is useful to describe how each of the Plaintiffs in this proceeding

2

are connected to ownership of the Graceland cemetery.

Plaintiff, Osiris Holding of Florida, Inc. ("Osiris") purchased Graceland on March 28, 1991. Four years later, on March 17, 1995, the Plaintiff, Alderwoods Group, Inc. ("Alderwoods"), acquired Osiris in a stock purchase. Alderwoods was then known as Loewen Group International, Inc. ("Loewen Group"). On December 19, 2006, after the bankruptcy case described below, Plaintiff, Northstar Graceland, LLC ("Northstar") acquired Graceland from Osiris.

## The Prior Bankruptcy Case

Loewen Group, Osiris, and 814 other Loewen Group subsidiaries, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on June 1, 1999 in the United States Bankruptcy Court for the District of Delaware. These cases were administratively consolidated under Case No. 99-01244 (PJW) (The Delaware bankruptcy case will be referred to in this Opinion as the "Prior Bankruptcy Case." Plaintiffs, Alderwoods and Osiris, will be referred to as the "Former Debtors").

On October 21, 1999 the Delaware bankruptcy court entered an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order") [CP# 46, Ex. D]. Specifically, the Bar Date Order approved the notice procedures to known creditors and authorized the Debtors to serve notice on unknown creditors via publication

in the following national periodicals: *The Wall Street Journal,*
*The New York Times, USA Today, The Globe* and *The National Post.*
It further noted that "the form and manner of notice of the Bar
dates approved hereby are deemed to fulfill the notice
requirements of the Federal Rules of Bankruptcy Procedure." (Bar
Date Order ¶3.)   The approved form of publication notice only
contained the name of one debtor, the parent company, Loewen
Group.  The Bar Date Order provides further that "any Entity that
is required to file a proof of claim in these chapter 11 cases
... but that fails to do so in a timely manner, shall be forever
barred, estopped and enjoined from ... asserting any Claim
against any of the debtors that such entity has." (Bar Date Order
¶ 11.)   Debtors complied with the Bar Date Order and published
notice to all unknown creditors pursuant to the guidelines set
forth in the Bar Date Order (the "Publication Notice") [CP# 46,
Ex. E].

The Debtors filed their Fourth Amended Joint Plan of
Reorganization on September 10, 2001 and the plan was confirmed
on December 5, 2001.  The plan became effective on January 2,
2002 ("Effective Date").  On the Effective Date, Loewen Group
officially changed its name to Alderwoods.

### The State Court Action

On December 12, 2004, Revis Garcia ("Garcia") filed a
complaint against Northstar and the Former Debtors in the Circuit

4

Court, Miami-Dade County, Florida, Case No. 04-25646-CA-32 (the "State Court Case").  Some two years later Defendants Johnson and Woodbury joined the State Court Case as plaintiffs.  The Fourth Amended Complaint (the "State Court Complaint") [CP# 46, Ex. K], filed on March 3, 2008, contains four bases for relief: (1) Tortious Interference with Dead Bodies; (2) Intentional or Reckless Infliction of Emotional Distress; (3) Gross Negligence; and (4) Equitable/Injunctive Relief.[1]  The crux of the complaint is that Graceland's mismanagement and poor record-keeping rendered Graceland unable to promptly and accurately locate thousands of remains buried in the old section of the cemetery.

The facts surrounding each of the state court plaintiffs' claims are fairly similar.  All involve stories of families who lost their loved ones only to have their loved ones lost again (The state court plaintiffs, who are the named Defendants in this proceeding, will be referred to in this Opinion as the "Tort Claimants").  A more detailed summary of the facts alleged in the State Court Case follows.

Reyvis Garcia's mother, Eloisa Garcia, passed away in 1986 and was buried at Graceland.  The plot was purchased by his aunt,

---

[1]    On September 17, 2007, the plaintiffs filed a motion in the State Court Case to certify a purported class of similarly situated parties [CP# 48, Ex. H]. According to the parties, the motion was still pending when this adversary proceeding was commenced.

Alicia Garcia, who was an original state court plaintiff until the time of her own passing.  Due to the family's economic status at the time of Eloisa's death, they did not purchase a headstone for the grave site.  Sometime in 2003, Reyvis and Alicia attempted to visit Eloisa's grave, but the employees at Graceland could not locate the site.  The Garcias requested that Graceland promptly locate Eloisa's remains.  However, because of the site's record keeping problems, the only method of locating and identifying remains involved digging up a series of grave sites in the vicinity, removing the vault lid with a backhoe and placing the lid on a burial space so that the coffin and remains within could be viewed and inspected to determine who was buried at that specific location.  Because of the time and expense of conducting this process, it took several months to locate Eloisa's burial site.

In 1989, Mercedes Woodberry buried her stillborn child, Sacressida Constance Gilbert, at Graceland.  At that time, no headstone was purchased for the baby's grave site.  In 1994, Mercedes contacted Graceland about purchasing a headstone for the site, but was informed that the baby's burial site could not be located.  In 1995, Ms. Woodberry went back to Graceland and was told that her child's remains were still missing.  Ms. Woodberry visited Graceland again in 2000, but her stillborn child's grave site remained a mystery.  In 2008, when Graceland inspected what

they thought was Sacressida's final resting place, the remains were inconsistent with those of Sacressida Constance Gilbert.

Ramona Johnson's father, Robert Williams, Sr., passed away and was buried at Graceland in 1993.  In Johnson's case, a temporary marker and burial card was placed on the site at the time of the burial.  The family also purchased a burial marker from the Veterans Administration, but Graceland informed the family that without a granite headstone, they could not affix the military marker to the site.  No headstone was ever purchased for Mr. Williams's grave site.  The temporary marker had faded by 1995 and in 2001, Ms. Johnson was completely unable to find her father's final resting place.

## Procedural Background

On April 7, 2008, the Former Debtors and Northstar initiated this adversary proceeding seeking declaratory relief that all of the claims in the State Court Case, including the claim for injunctive relief, were claims under §101(5) of the Bankruptcy Code that were discharged in the Prior Bankruptcy Case.

Northstar is separately named as a plaintiff in this proceeding since it is the current owner of Graceland and a defendant in the State Court Case.  However, Northstar's right to relief in this adversary proceeding rises or falls with the rights of the Former Debtors.

On May 7, 2008, the Tort Claimants filed a Motion to Dismiss

7

Amended Complaint or, in the Alternative, for Abstention and/or Remand ("Motion to Dismiss")[CP# 10]. The Court found that it had subject matter jurisdiction over the dispute and that neither abstention nor remand was required or appropriate [CP# 17]. The Court questioned whether venue was appropriate since the Prior Bankruptcy Case was filed and administered in the Delaware Bankruptcy Court. In response, the parties stipulated to maintaining venue in this Court. On June 9, 2008, Defendants filed their Answer and Affirmative Defenses to Amended Complaint [CP# 19], asserting that they did not receive adequate notice in the Prior Bankruptcy Case and therefore, their claims were not subject to the discharge. They also alleged that their State Court Case claims were not dischargeable §101(5) claims. Thereafter, the parties both moved for summary judgment.

The Court conducted a hearing on the motions for summary judgment on October 3, 2008. The issues before the Court have been well briefed. In particular, the Court has considered Plaintiffs' Motion for Summary Judgment [CP# 46] and accompanying exhibits, Defendants' Response to Plaintiffs' Motion for Summary Judgment [CP# 47] and Cross-Motion for Summary Judgment [CP# 48] and accompanying exhibits, Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment ("Plaintiffs' Reply") [CP# 52], Defendants' Reply to

8

Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment ("Defendants' Reply") [CP# 53], as well as the arguments of counsel at the October 3rd hearing.

## Discussion

The Former Debtors contend that they are entitled to summary judgment as a matter of law because the State Court Complaint is barred by the confirmation order in the Prior Bankruptcy Case. Defendants, the Tort Claimants, assert first that their claim for equitable relief is not a claim as defined in Section 101(5) of the Bankruptcy Code and therefore was not affected by the discharge. Second, they argue that even if the damage claims and injunctive relief claims were "claims" in the Prior Bankruptcy Case, the publication notice given to the Tort Claimants in the prior bankruptcy case was constitutionally deficient and, as such, none of the claims were discharged. For the reasons set forth below, the Court finds that all of the claims in the State Court Case, including the claim for injunctive relief, as pled in the State Court Complaint, are claims under 11 U.S.C. §101(5). However, the Court finds for the Tort Claimants on the notice issue. The Publication Notice provided to the Tort Claimants in the Prior Bankruptcy Case was constitutionally deficient and thus, the claims were not discharged.

## Summary Judgment Standard

Summary Judgment is only proper where the "pleadings,

9

depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the burden of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 105 S.Ct. 2548, 2553 (1986). If the Court, after examining all factual inferences in the light most favorable to the non-moving party finds no issue of material fact then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

> **A.    The Damage Claims and the Injunctive**
> **Relief, as Pled in the State Court Case,**
> <u>**Were Claims in the Prior Bankruptcy Case**</u>

The Former Debtors contend that confirmation of their plan in the Prior Bankruptcy Case discharged those entities of their debts.  The term debt is defined in the Bankruptcy Code as a "liability on a claim". 11 U.S.C. §101(12).  In turn, the Bankruptcy Code defines a "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach **gives rise to a right to payment**, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

10

11 U.S.C. §101(5) (emphasis added).  At the hearing on the motions for summary judgment, Defendants' counsel conceded that the state court tort claims are §101(5) claims subject to discharge. Therefore, the only remaining §101(5) claim issue is whether or not the equitable relief sought in the State Court Complaint "gives rise to a right to payment," rendering it a claim subject to discharge.

The issue of whether a request for injunctive relief is a claim was addressed by the United States Supreme Court in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705 (1985). There, the State of Ohio obtained an environmental injunction pursuant to a settlement agreement with Kovacs, the CEO and shareholder of an industrial and hazardous waste disposal plant.  When Kovacs did not comply with the clean-up required by the settlement agreement, a receiver was appointed to complete the task. Thereafter, Kovacs filed a bankruptcy petition and the State of Ohio sought a declaration from the bankruptcy court that the injunction was not a debt, and therefore not a claim which Kovacs could discharge in his bankruptcy case.

The Supreme Court affirmed the lower court ruling in favor of Kovacs finding that the equitable remedy sought by the state gave rise to a right to payment.  The Court noted that "there is no suggestion by [Ohio] that [Kovacs] can render performance under the affirmative obligation other than by the payment of

11

money." *Kovacs*, 469 U.S. at 281, 105 S.Ct. at 708.  Moreover, in a lengthy footnote, the *Kovacs* Court reasoned that the State of Ohio's  discovery of Kovacs' assets led to the conclusion that the State was primarily interested in monetary, not injunctive relief.   469 U.S. at 282 n. 9, 105 S.Ct. at 709 n. 9.   It reasoned that, under the circumstances, "the cleanup duty had been reduced to a monetary obligation." 469 U.S. at 283, 105 S.Ct. at 710; *accord In re Penn Terra Ltd.*, 733 F.2d 267, 278 (3d Cir. 1984) (Courts are generally focused on "whether plaintiff seeks compensation for past damages or prevention of future harm.").

Here, as presently pled, the State Court Complaint seeks "a permanent mandatory injunction that requires [State Court] Defendants to ***fund*** a court supervised program that provides for an Examiner, the establishment of a Blue Ribbon panel of experts to survey, test monitor and study the cemetery and disturbed remains to ascertain the location of and disposition of the subject remains and to insure their proper identification and perpetual care."   (State Court Complaint ¶ 122.) (emphasis added).

The Tort Claimants argue that the injunctive relief sought is mandatory under Florida law and cite to the statutory care mandated by the Florida Cemetery Act, Chapter 497, Florida Statutes.  That act obligates all Florida cemeteries to exercise

care and maintenance of their premises.  While the Court agrees that a cemetery's compliance with Florida's Cemetery Act is mandatory, it finds the Tort Claimants' argument unpersuasive since the State Court Complaint does not seek relief under Florida Statutes Chapter 497.  In fact, the State Court Complaint makes no mention of Florida Statutes Chapter 497 and its statutory framework, nor does it seek a prohibitive injunction. Rather, the Complaint seeks a mandatory injunction requiring the payment of funds and the appointment of an independent examiner. Thus, the relief presently sought in the State Court Complaint is analogous to the relief sought in *Kovacs*.

For the foregoing reasons, the Court finds that the equitable relief sought in the State Court Complaint gives rise to a right to payment and was thus a claim under §101(5) in the Prior Bankruptcy Case.  This ruling is limited to a determination that the injunctive relief, as pled in the presently pending State Court Complaint in the State Court Case, gives rise to a right of payment and is therefore a "claim" that was subject to discharge in the Prior Bankruptcy Case.  Whether the Tort Claimants could amend their count for injunctive relief to seek relief that would not be treated as a bankruptcy claim is beyond the scope of this Order.[2]

---

[2]    Although the Court is appropriately hesitant to enter an advisory opinion, it does note that it is not adopting the Former Debtors' argument that any

**B.   The Publication Notice Provided
by Former Debtors Did Not Meet the
Constitutional Standards of Due Process**

In their affirmative defenses to the Amended Complaint, the
Tort Claimants allege that they were entitled to actual notice
as known creditors.  However, in their Cross Motion for Summary
Judgment, they argue that even if they were unknown creditors
entitled only to publication notice, the publication notice given
in the Prior Bankruptcy Case was insufficient, as a matter of
law, to satisfy the Tort Claimants' due process rights.  The
Court agrees.[3]

**1.   The Supreme Court
Established the Standard for
Evaluating the Constitutional Sufficiency
of Publication Notice in *Mullane v. Hanover***

The Tort Claimants do not dispute the fact that the court

---

injunctive relief which would require the expenditure
of funds constitutes a claim.  As the Former Debtors
acknowledge, an injunction which requires the owner of
an environmentally contaminated site to ameliorate an
ongoing hazard is not a dischargeable claim.  *See e.g.,
In re Torwico Elecs., Inc.* 8 F.3d 146, 149-150 (3d Cir.
1993).  In these types of cases, even though the
injunctive relief will require defendant to spend money
to comply, this does not mean the relief gives rise to
a "right of payment" rendering it a claim under the
Bankruptcy Code.

[3]   Since the Court finds that the notice was deficient,
even if the Tort Claimants were unknown creditors, it
does not reach the issue of whether there is a genuine
issue of fact with respect to whether they were known
creditors entitled to actual notice in the Prior
Bankruptcy Case.

in the Prior Bankruptcy Case approved the form and manner of the Publication Notice nor do they dispute the fact that upon confirmation of the plan in the Prior Bankruptcy Case, §1141(d)(1)(A) of the Bankruptcy Code discharged debts arising before confirmation. Rather, they rely on the well-accepted principle that the discharge only applies to creditors who received constitutionally adequate notice of the bankruptcy case and the deadline for filing claims. *In re Spring Valley Farms, Inc.*, 863 F.2d 832 (11th Cir. 1989); *Grand Pier Center LLC v. ATC Group Services, Inc.*, 2007 WL 2973829 (N.D. Ill., Oct. 9, 2007).

The Former Debtors do not contest this principle of law and, in fact, acknowledge in their Motion for Summary Judgment that "[c]ourts have recognized that discharge of a particular asserted claim under §1141(d)(1)(A) may violate the Fifth Amendment [to the United States Constitution] if the claimant was not provided sufficient due process prior to discharge." (Plaintiffs' Motion for Summary Judgment p. 17, *citing Gencor Indus., Inc. v. CMI Terex Corp. (In re Gencor Indus., Inc.)*, 298 B.R. 902, 914 (Bankr. M.D.Fla. 2003)). The Former Debtors argue, however, that the Publication Notice in the Prior Bankruptcy Case was constitutionally sufficient.

Notice to unknown creditors may be provided by publication. *Tulsa Professional Collections Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340 (1988); *Naimoli v. Anchor Glass Container Corp.*

(*In re Anchor Glass Container Corp.*), 325 B.R. 892, 895 (Bankr. M.D.Fla. 2005). However, the Delaware court's approval of the Publication Notice in the Prior Bankruptcy Case is not a de facto finding of due process and therefore does not end the analysis. *Cf. Grand Pier Center LLC v. ATC Group Services, Inc.*, 2007 WL 2973829 at *12 (N.D.Ill. Oct. 9, 2007) ("Even if the [bankruptcy court] Orders ... can be read as approving of the Notice of Publication, ... the bankruptcy court's order cannot supercede the requirements of the Bankruptcy Rules."). Rather, the sufficiency of the Publication Notice provided here must be examined under the due process standard adopted by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652 (1950).

In *Mullane*, the Supreme Court established the standard for determining whether publication notice is sufficient under the due process clause of the Constitution (the "Due Process Clause"):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice <u>reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action</u> and afford them an opportunity to present their objections.

339 U.S. at 314, 70 S.Ct. at 657 (emphasis added).

The *Mullane* standard is directly applicable to notice issues in bankruptcy cases. *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir.

2000); *In re UAL Corp.*, 386 B.R. 701, 712 (Bankr. N.D.Ill. 2008) *rev'd on other grounds*, 398 B.R. 243 (N.D.Ill. 2008). In analyzing specifically whether publication notice of a Chapter 11 bar date satisfies the *Mullane* standard, the proper inquiry is whether the party providing notice "acted reasonably in selecting means likely to inform persons affected ..." *In re The Charter Co.*, 113 B.R. 725, 728 (Bankr. M.D.Fla. 1990), *rev'd on other grounds* 125 B.R. 650 (M.D.Fla. 1991).

The Supreme Court recognized in *Mullane* that publication notice is not a reliable way to actually reach creditors observing that "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper." 339 U.S. at 315, 70 S.Ct. at 658. Nevertheless, this does not mean that the form and manner of publication notice employed by a debtor is irrelevant. The *Mullane* Court also noted that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315, 70 S.Ct. at 657. Thus, publication notice in a bankruptcy case is not a mere formality. If a debtor's effort to provide notice to unknown creditors is not reasonable, the unknown creditors' claims will not be discharged. That is the law.

In applying the constitutional standard to the Publication Notice at issue here, the Court will first describe why the

17

Publication Notice did not comply with applicable provisions of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Next, the Court will explain why the sufficiency of the Publication Notice provided in the Prior Bankruptcy Case of over 800 jointly administered debtors must be judged under the same standard that would have applied if Former Debtor Osiris had been the only debtor. The final section of the Opinion will describe why the Publication Notice was clearly deficient under the facts and circumstances of this case.

### 2.    The Publication Notice Failed to Comply With Rules 1005 and 2002(n) of the Federal Rules of Bankruptcy Procedure

The Bankruptcy Rules prescribe the form of notices which debtors must provide to creditors. In 1999, when the Publication Notice was issued in the Prior Bankruptcy Case, Rule 1005 provided that the title of the case in the caption of a bankruptcy petition shall include the name of the debtor and "all other names used within six years before filing the petition." Fed.R.Bankr.P. 1005. The Advisory Committee Note specifically states that "[a]dditional names of the debtor are also required to appear in the caption of each notice to creditors." Fed.R.Bankr.P. 1005, Notes of the Advisory Committee. Rule 2002(n) also makes it clear that the Rule 1005 caption requirement does not only apply to the petition stating, in relevant part, that "[t]he caption of <u>every</u> notice given under

18

[Rule 2002] shall comply with Rule 1005." Fed.R.Bankr.P. 2002(n) (emphasis added).

The requirement that notice include "all other names" of the debtor "enables creditors to identify the debts that the debtor owes them, which may have been incurred under a name other than that currently used by the debtor." 9 Collier on Bankruptcy ¶ 1005.01, p. 1005-2 (15th ed. 2008). Moreover, the clause "all other names" in Rule 1005 "include trade names ... as well as any other names under which the debtor may previously have operated." *Id.*

Without question, the Publication Notice in the Prior Bankruptcy Case violated Rule 2002(n) and Rule 1005. The only debtor named in the caption was the parent company, Loewen Group International, Inc. Former Debtor Osiris, the debtor subject of the Tort Claimants' claims, was not named in the caption nor was Graceland Memorial Park South, the name under which Osiris or its predecessors conducted business with the Tort Claimants or their families.

Courts have held that failure to comply with the captioning requirement is a defect which renders notice deficient under *Mullane.* *See, e.g., Grand Pier Center LLC v. ATC Group Services, Inc.,* 2007 WL 2973829 (N.D.Ill. Oct. 9, 2007); *In re AM Int'l, Inc.,* 142 B.R. 252 (Bankr. N.D.Ill. 1992). Both of these decisions are instructive since they both involved a creditor who

did business with the debtor under a name not listed in the
caption of the bar date notice.

In *Am Int'l*, the creditor, Wella, bought a manufacturing
facility from the debtor years before the debtor filed its
bankruptcy case.  At the time of the purchase, the debtor's name
was Addressograph-Multigraph Corporation.  Three years before
filing bankruptcy, the company changed its name to AM
International, Inc. ("AM International"), and that was the only
name listed in the caption of the bar date notice.

After AM International received its discharge, Wella
discovered that the property it had purchased from the debtor
prior to its bankruptcy was contaminated with hazardous waste.
Like the Tort Claimants in this proceeding, Wella sued the
reorganized debtor in a non-bankruptcy forum and like the Former
Debtors here, AM International filed an adversary proceeding in
the bankruptcy court.  Again, like here, the former debtor sought
a declaration that Wella's claim had been discharged in the prior
bankruptcy case and sought an injunction barring Wella from
pursuing its lawsuit.

Wella argued that the defect in the caption of the notice
of bar date violated the Due Process Clause.  The *Am Int'l* court
agreed.  As in the instant proceeding, the court assumed, for
summary judgment purposes, that Wella was an unknown creditor
which could be served by publication.  Nevertheless, the court

found that the caption in the publication notice was defective
under Rule 1005 since it did not include, as the rule requires,
the name Addressograph-Multigraph Corporation, a name used by the
debtor within six years of its bankruptcy filing.  The rule
violation was particularly significant since Wella's claim arose
from a transaction with the debtor when its name was
Addressograph-Multigraph Corporation.  The court concluded that
the notice was "not reasonably calculated to inform Wella of the
time in which it was required to file claims." *In re Am Int'l*,
142 B.R. at 257.  As such, the notice failed to meet the due
process standard in *Mullane* and the court granted Wella's motion
for summary judgment finding that its claim was not discharged.

In *Grand Pier*, the debtor was one of eight jointly
administered cases and the critical name omitted from the caption
was a name under which the debtor did business.  Specifically,
the creditor, Grand Pier, retained a company called "ATC
Associates, Inc." as an environmental consultant.  All invoices
to the creditor were issued in that name.  Thereafter, ATC Group
Services, Inc., filed a Chapter 11 petition.  In compliance with
Rule 1005 the petition included "ATC Associates, Inc." since it
was a name used by the debtor in the six years prior to the
petition.  However, the notice of bar date did not include the
name ATC Associates, Inc.  The *Grand Pier* court found that the
bar date notice failed to comply with Rule 1005 and as such, was

21

insufficient to result in a discharge of Grand Pier's claims. *In re Grand Pier*, 2007 WL 2973829 at *7.

Like the debtors in *Grand Pier* and *AM Int'l*, the Former Debtors failed to comply with Rule 1005 and Rule 2002(n), since the Publication Notice did not include the name Osiris Holding of Florida, Inc., the debtor which owned the Graceland cemetery, nor the name Graceland Memorial Park South, the name under which Osiris did business. The Former Debtors argue that the rule violation does not render the notice insufficient. In particular, they note that Rule 2002(n) provides that the caption of notices must comply with Rule 1005 and include the information required by §342(c) of the Bankruptcy Code. Like Rule 1005, §342(c) requires notice to include the name of the debtor. In shifting the focus of the argument to §342(c), the Former Debtors then note that §342(c), as it read when the Publication Notice was issued in the Prior Bankruptcy Case, expressly stated that "the failure of such notice to contain such information shall not invalidate the legal effect of such notice." 11 U.S.C. §342(c). Thus, the Former Debtors argue that the captioning defect was not a defect that necessarily rendered the notice a denial of due process.

The Court agrees that the rule violations do not mandate a finding of constitutional infirmity. Nevertheless, the failure to name Osiris or Graceland in the caption was not a minor

procedural defect. As other courts have found, the accuracy of the caption is of substantive importance in bankruptcy cases. *In re Austin*, 46 B.R. 358, 360 (Bankr. E.D.Wisc. 1985). After all, "[i]t is the caption which informs creditors of exactly who has commenced a bankruptcy case so that the creditor has an opportunity to determine whether they have a claim against the debtor's estate." *In re AM Int'l,* 142 B.R. at 256. The Tort Claimants here had no such opportunity since the caption of the Publication Notice provided no notice that Osiris had commenced a bankruptcy case.

In sum, although the Former Debtors' clearly failed to provide notice in compliance with the Bankruptcy Rules, this defect alone does not automatically equate to a finding of a violation of due process. The Court must still analyze the sufficiency of the notice under the standard set forth in *Mullane.* In applying that standard to the instant case, the Court finds the following two inquiries particularly instructive: (1) what effort would have been reasonable if Osiris, the owner of Graceland, had been the only debtor in the Prior Bankruptcy Case; and (2) what did Osiris know, on or before the Effective Date, about problems existing at Graceland. As explained in the remainder of the Opinion, this analysis results in the clear conclusion that the Publication Notice here did not provide due process to the Tort Claimants.

3.   **The Notice Provided to the Tort Claimants as Creditors of One of 816 Jointly Administered Debtors Should be Scrutinized Under the Same Standard That Would Apply if Former Debtor Osiris had Been the Only Debtor**

In attempting to minimize or justify their failure to comply with the Bankruptcy Rules, the Former Debtors argue that including a caption with the names of each of the 816 debtors would have required "extraordinary effort." (Plaintiffs' Reply p. 11.)  They argue further that "[p]ublication notice in a sizeable complex case with multiple debtors would become prohibitively burdensome and expensive under the standard advanced by Defendants." *(Id.* p. 12.)  Thus, they argue that complying with the caption requirements in Bankruptcy Rule 1005 and publishing in local newspapers was not constitutionally required in this large case consisting of 816 different debtors. The Tort Claimants argue persuasively that the Former Debtors are wrongly proposing "an inverse sliding scale of due process whereby the *Mullane* 'reasonable calculation' notice standard decreases as the number of debtors in an administratively consolidated case increases." (Defendants' Reply p. 1.)

Clearly, the Tort Claimants are correct.  The unknown creditors of each debtor in a jointly administered case are constitutionally entitled to notice judged under the same standard that would apply if they were unknown creditors of a

single debtor.  Joint administration provides efficiency and cost savings in multiple debtor cases.  However, joint administration does not affect the substantive rights of creditors.  *In re Blair*, 226 B.R. 502 (Bankr. D.Me. 1998).  Those substantive rights obviously include the right to notice comporting with due process.

This proposition is not remarkable and indeed, at oral argument, Former Debtors' counsel conceded that the sufficiency of the Publication Notice should be viewed the same as it would have been viewed if Osiris, the owner of Graceland, had been the only debtor in the Prior Bankruptcy Case.

There is one other flaw in the Former Debtors' reference to the impracticality or expense of publishing notice with the names of all of the jointly administered debtors, namely, the fact that this Court is not determining whether <u>all</u> the debtors should have been included in the caption of a publication notice.  This Court's task is not to determine the sufficiency of the Publication Notice as to unknown creditors of all 816 jointly administered debtors.  Rather, because these cases were jointly administered, and not substantively consolidated, the sole issue before the Court is whether notice to the Tort Claimant creditors of Former Debtor Osiris was sufficient.

Thus, the Court must examine what Osiris, the Former Debtor that owned and operated Graceland, knew, as of the Effective Date

of the plan, and what reasonable notice it should have provided to its unknown creditors under the circumstances. That issue must be judged no differently than if Osiris had been the only debtor in the Prior Bankruptcy Case.

4. **The Publication Notice Provided in the Prior Bankruptcy Case was Constitutionally Deficient Particularly Since the Former Debtors Were Aware of Record Keeping and Grave-Site Location Problems at Graceland**

As the Former Debtors acknowledge, "the due process inquiry requires a consideration of the totality of the circumstances in each particular case." (Plaintiffs' Reply p. 16.) "Process that may be constitutionally sufficient in one setting may be insufficient in another." *In re Mansary-Ruffin*, 530 F.3d 230, 239 (3rd Cir. 2008). Here, for the reasons explained earlier, the "particular case" is the case of Osiris, the Former Debtor that owned the Graceland cemetery, the subject of the State Court Case. The "totality of the circumstances," as applied here, includes the circumstances at Graceland that Osiris was aware of on or before the Effective Date of the plan.

The record clearly establishes that the Former Debtors knew about problems at Graceland on the Effective Date of their plan. From the Court's own review, this much is clear:

(a) Prior to confirmation, Graceland had serious problems locating bodies in the older section of its

cemetery [CP# 48, Ex. B];

(b) Prior to confirmation, at least one of the Tort
Claimants, and possibly two, were notified by
Graceland that the burial sites of their loved ones
could not be located [CP# 48, Exs. J & K];

(c) Since at least 1996, the State of Florida's
Division of Banking and Finance was unable to conduct
an investigation of Graceland's books and records due
to inaccuracies and incompleteness of documents
reflecting burial space inventory and pre-need trust
accounts, leading to at least one suspension of its
license and certificate of authority to operate
certain cemetery functions [CP# 48, Exs. C & D]; and,

(d) According to Graceland, as a result of its
problems locating burial sites in the old section of
the cemetery and at the request of the State of
Florida, Graceland constructed a mass memorial some
time between 2000 and 2002 in order to identify and
honor the thousands of lost bodies buried in the old
section of the cemetery [CP# 48, Exs. B & F].

Thus, there is no genuine issue of material fact that prior to
the Effective Date of their plan of reorganization, the Former
Debtor Osiris knew enough about record-keeping problems and lost
burials, or at the very least, the difficulties it was

experiencing locating grave-sites at Graceland, to reasonably expect future problems and future claims from family members like the Tort Claimants here.

Under *Mullane*, the Former Debtor had a constitutional obligation to craft a notice "reasonably calculated," under all of the circumstances, to apprise the Tort Claimants of the pendency of the case and an opportunity to file claims. *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. Given their awareness of problems at Graceland, this calculation should have included, at the very least, compliance with the Bankruptcy Rules which required the notice to include the name of the particular debtor, Osiris, which owned Graceland, and Graceland Memorial Park South, the name of the cemetery itself. Moreover, the notice should have been published in a South Florida newspaper where creditors of Graceland would at least have had the opportunity to see the notice affecting their rights.

Returning first to the significance of the captioning violation, although *Grand Pier* and *AM Int'l* found that the rule violation itself was sufficient to render the notices in those cases deficient, both of those courts **also** found the notices to be constitutionally deficient under *Mullane*. In *Grand Pier*, the court stated that even if it "made a more typical fact-sensitive assessment of due process concerns familiar to courts for decades under [*Mullane*]," the notice was deficient and the creditor was

28

entitled to summary judgment.  *In re Grand Pier, LLC*, 2007 WL 2973829 at *12 n. 7.  In finding the notice insufficient under *Mullane*, the court stated:

> Under the record presented, if *Grand Pier* was an unknown creditor, it seemingly had no notice via the publication notices that its claim against "ATC Associates, Inc." (i.e., the only name provided by the entity it had ever done business with), was subject to an upcoming putative bar date via [the ATC Group bankruptcy case].

2007 WL 2973829 at *7 n. 5.  Along the same lines, in finding the notice deficient in *AM Int'l*, the court stated that "[t]he issue in the present case as framed by the Supreme Court's [*Mullane*] ... decision, is whether AMI's Notice of Bar Date was reasonably calculated to inform Wella of AMI's bankruptcy so that Wella could determine whether it held a claim against AMI's bankruptcy estate."  *In re AM Int'l*, 142 B.R. at 255.

Similar to the conclusions drawn in *Grand Pier* and *AM Int'l*, this Court concludes that the Former Debtors' failure to comply with the captioning requirements for the Publication Notice in the Prior Bankruptcy Case was a violation of due process because, under the circumstances here, the Publication Notice was not reasonably calculated to inform the Tort Claimant creditors of Former Debtors' pending bankruptcy and bar date.

Finally, the Court turns to the failure of the Former Debtors to publish notice in a South Florida newspaper.  The

Former Debtors argue that publishing notice only in national publications was reasonable arguing that "[i]t would be unduly burdensome and expensive to force a debtor with national operations and hundreds of different places of business to publish a bar date notice everywhere it does business." (Plaintiffs' Reply p. 16.)  In support, Plaintiffs cite *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr. E.D.Va. Nov. 21, 2005) and *In re Best Products Co.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992).  In both of these cases, the bankruptcy court found that notice published in national publications was sufficient.

The rulings in *U.S. Airways* and *Best Products* have no application in this proceeding.  Those two debtors were nationally known companies doing business under a single, nationally known name.  Those are not the facts here.  These Tort Claimants, with loved ones buried (somewhere) in the Graceland cemetery, could not possibly have known that notice of the Delaware bankruptcy case of the "Loewen Group," published in the *New York Times* or *USA Today*, had anything whatsoever to do with the Graceland cemetery.

In arguing against the need for publication in a local newspaper, Former Debtors also cite *Castleman v. Liquidating Trustee*, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007).  Their reliance on *Castleman* is misplaced.  In that case, a plan was

confirmed for debtor, Agway, in 2004.  Publication notice was included in two national newspapers, the *New York Times* and the *Wall Street Journal*.  Notice was also published in the *Syracuse Post-Standard*, the city where Agway was conducting business.

A year after confirmation, the former debtor, Agway, was sued in state court in Texas by individuals who claimed they were exposed to asbestos while working in a Texas refining plant formerly owned by Agway.  The claimants argued that their claims were not discharged and argued, in particular, that Agway should have provided publication notice in a Texas newspaper, in the vicinity of Galveston where the plant was located.

The court rejected the claimants' argument for two reasons.  First, when Agway filed its bankruptcy case, it had no reason to believe there were potential asbestos claimants in Texas.  Second, Agway was not conducting any business in Texas when it filed bankruptcy.  In fact, the Texas refinery's assets were sold in 1987, fifteen (15) years before the bankruptcy.  For these reasons, the Court found insufficient facts to demonstrate that Agway should have published in a local Galveston newspaper.  *Castleman*, 2007 WL 2492792 at *5-6.

The facts in the instant proceeding are far different.  First, although no formal claims had been filed against Osiris before the Effective Date of the plan in the Prior Bankruptcy Case, Osiris was aware of record-keeping and grave location

31

problems that existed at the time.  Second, unlike the debtor in
*Castleman*, Former Debtor Osiris owned and operated Graceland, in
Miami, before and during the Prior Bankruptcy Case.  If anything,
the fact that debtor Agway in the *Castleman* case published notice
in a local Syracuse newspaper, where it was doing business,
supports the Tort Claimants' argument that Former Debtor Osiris
should have published notice in a South Florida newspaper, where
Osiris was doing business.

In sum, under the circumstances here, publishing only in
national publications, with no reference to Osiris or Graceland,
provided no meaningful notice at all and therefore was not
reasonable under the circumstances.

### Conclusion

The Former Debtor Plaintiffs in this proceeding seek to
enforce the discharge obtained in the Prior Bankruptcy Case
against the Tort Claimant Defendants.  The Tort Claimants seek to
pursue tort claims arising from problems known to the Former
Debtors prior to the effective date of their Chapter 11 plan.
The Former Debtors argue that their court approved Publication
Notice in national newspapers was sufficient to satisfy due
process.  In *Mullane*, the Supreme Court observed that "when
notice is a person's due, process which is a mere gesture is not
due process."  *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657.  That
observation aptly applies in the instant case.  The Former

32

Debtors' notice to the Tort Claimants, published only in national publications with no reference to Osiris or Graceland Cemetery, was just such a "mere gesture."  Therefore, the Tort Claimants did not receive constitutionally sufficient notice in the Prior Bankruptcy Case and as such, their claims were not discharged. The Tort Claimants are entitled to summary judgment in this proceeding.

Therefore, it is -

**ORDERED** as follows:

1.    Plaintiff's Motion for Summary Judgment is denied.

2.    Defendants' Cross-Motion for Summary Judgment is granted.

3.    The Court will enter a separate Final Judgment in favor of the Defendants declaring that the claims asserted in the State Court Case were not discharged in the Prior Bankruptcy Case.

###

COPIES FURNISHED TO:

Charles W. Throckmorton, Esq.
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Miami, FL 33134
(Counsel for Defendants)

Andrew D. Zaron, Esq.
HUNTON & WILLIAMS, LLP
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
(Counsel For Plaintiffs, Alderwoods and Osiris)

Alan J. Perlman, Esq.
ADORNO & YOSS, LLP
350 E. Las Olas Blvd.
Suite 1700
Ft. Lauderdale, FL 33301
(Counsel for Plaintiff, Northstar)